Cuyahoga County Bar Association *v.* Ballou.

[Cite as *Cuyahoga Cty. Bar Assn. v. Ballou,*
109 Ohio St.3d 152, 2006-Ohio-2037.]

(No. 2005–1170—Submitted August 23, 2005—Decided May 10, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Scott H. Ballou of Cleveland, Ohio, Attorney Registration No. 0025669, was admitted to the practice of law in Ohio in 1980. On February 19, 2004, relator, Cuyahoga County Bar Association, charged in an amended complaint that respondent had engaged in professional misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause, including the parties' stipulations, and made findings of fact, conclusions of law, and a recommendation, which the board adopted.

## Misconduct

{¶ 2} The board found that respondent had violated DR 6–101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter) because he did not appear on a client's behalf at an eviction proceeding.

{¶ 3} Respondent agreed to help the client buy his residence and avoid eviction. Respondent requested a $1,000 retainer for his services. Respondent and the landowner's lawyer exchanged contracts to document the transaction, but the landowner's lawyer wanted verification of financing before proceeding with the sale and terminating the eviction. Respondent's client responded with a letter from a third party confirming the writer's intention to give the client the purchase price as a gift. Respondent was skeptical, as was the landowner's lawyer.

{¶ 4} Respondent was also concerned because his client had not yet paid the retainer he had requested. Respondent advised the client that he could not continue representing him and would not appear in court on the client's behalf without payment. Respondent also told the landowner's lawyer that he no longer represented the client because he had not been paid. The eviction case against the client proceeded to a hearing, which neither respondent nor his client

attended. After the hearing, the landowner regained possession of the property, and officials removed the contents of the client's home.

{¶ 5} Although respondent's client had not paid his fee, the board still found respondent guilty of neglect. The board concluded that the client, who had apparently frequented the same tavern as respondent and who had engaged respondent for a prior traffic case, had come to expect from their past professional relationship that respondent would accept late payments while continuing to provide representation. The board also noted that respondent did not confirm his decision to withdraw in writing.

{¶ 6} Relator also asserted that respondent's memory and work were suffering from his consuming alcohol during the day. Respondent conceded that prior to May 2002, he had regularly consumed alcohol at lunch and would return to work, sometimes seeing clients or making court appearances. He also admitted to being at times impaired due to alcohol while working.

{¶ 7} After finding a violation of DR 6–101(A)(3), the panel and board recommended the dismissal of other charged misconduct related to the client's eviction case. The panel and board also recommended dismissal of misconduct alleged in connection with an incarcerated client for whom respondent had filed a motion for judicial release. The incarcerated client contended that respondent had filed the motion, knowing it would fail, for the sole purpose of charging him $1,500. The panel and board found that relator had not shown that respondent had acted unethically in charging the client, as he had a legitimate, albeit unsuccessful, argument that the client qualified for this relief.

Sanction

{¶ 8} In weighing the aggravating factors of respondent's case, the panel and board found that respondent had harmed his client by impermissibly missing a court date that led to the client's eviction. See Section 10(B)(1)(h) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board observed that respondent should have notified the client and opposing counsel in writing of his withdrawal.

{¶ 9} In mitigation, respondent explained his difficulties with alcohol. He did not attempt to establish, however, that alcoholism had caused his neglect, a connection that is required for showing mitigation under BCGD Proc.Reg. 10(B)(2)(g)(ii). Nonetheless, respondent recounted that after being confronted in an intervention by his family, two judges, and associates, he completed a ten-week outpatient treatment program in July 2002. He has since completed the terms of a contract for his recovery with the Ohio Lawyers Assistance Program,

and he continues to abide by the contract. He also attends three Alcoholics Anonymous meetings weekly.

{¶ 10} Respondent, a practicing lawyer for 25 years, has not been sanctioned for professional misconduct before. See BCGD Proc.Reg. 10(B)(2)(a). He is a former assistant county prosecutor, but he now maintains a criminal-defense and personal-injury practice. Respondent has been associated with several law firms, but was in a solo practice at the time of the panel hearing.

{¶ 11} Relator advocated a public reprimand. Respondent argued for dismissal of all the charges. The panel recommended that respondent be publicly reprimanded for his neglect, and the board adopted that recommendation. Respondent does not object to the board's findings or the recommended sanction.

### Review

{¶ 12} We agree with the board's finding of misconduct and that a public reprimand is appropriate. Respondent is therefore publicly reprimanded for his violation of DR 6–101(A)(3). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

O'DONNELL, J., not participating.

---

**LUNDBERG STRATTON, J., dissenting.**

{¶ 13} I respectfully dissent. Because I believe that there was no contract for employment between respondent and his former client, I would dismiss the charge. I do not agree that accepting late payment on *one* prior case from a drinking buddy is sufficient ground for creating a subsequent contract for *new* employment.

{¶ 14} Furthermore, even if a contract for employment initially existed, I believe that the client breached the contract by failing to pay the retainer. The respondent told the client and opposing counsel that he would not participate as counsel in the eviction matter without payment. Therefore, the client could not reasonably rely on respondent's continued representation just because he had accepted late payment in one prior matter.

{¶ 15} The majority reasons that because respondent previously accepted late payment from this client in another matter and because respondent had not confirmed in writing that he would not represent the client unless the client paid the retainer, his failure to appear at the eviction proceeding constituted neglect of

a legal matter. I believe that this holding sends a confusing message to the bar. Does acceptance of late payment in *one* prior case bind the attorney to accept future late payments in new cases? Does a casual or social relationship between the parties create reliance where it normally would not exist? Should an attorney's failure to confirm withdrawal in writing result in a disciplinary charge? In *Trumbull Cty. Bar Assn. v. Donlin* (1996), 76 Ohio St.3d 152, 155, 666 N.E.2d 1137, we expressly held that the Disciplinary Rules do not require that notice to a client of withdrawal from employment be reduced to writing.

{¶ 16} Here, the respondent told the former client and opposing counsel that he would no longer actively represent the client in this matter. He specifically told the client that he would not appear in court on his behalf. The record does not reflect that respondent even filed an entry of appearance in the pending eviction proceeding. Nevertheless, the majority determines that respondent neglected a legal matter by failing to appear at the hearing.

{¶ 17} This conclusion directly contradicts the holding in *Smith v. Conley,* 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, in which this court concluded that the attorney-client relationship between Smith and Conley was terminated when Conley informed Smith that he would no longer represent him after Smith, having been convicted at trial, asked Conley to request a new trial based on allegedly exculpatory evidence that Smith claimed to have discovered. Although Conley had not yet withdrawn as counsel of record as required by local court rules and was still counsel of record when he told his client that he would no longer represent him, this court considered the attorney-client relationship terminated at that point for purposes of accruing a cause of action for legal malpractice.

{¶ 18} In *Conley,* the court accepted that Conley had terminated the attorney-client relationship through a telephone conversation and two letters to his client memorializing that conversation, although he remained counsel of record before the court. Here, the respondent notified his client that he would not represent him without payment and that he would not represent him in the eviction action. The majority refuses to accept respondent's representation and instead issues sanctions for his conduct. I believe that the results in these two cases are inconsistent and confusing for the bar. Therefore, I respectfully dissent.

---

Stanley E. Stein & Associates Co., L.P.A., and Stanley E. Stein; Zashin & Rich Co., L.P.A., and Andrew A. Zashin; Law Offices of Ellen S. Mandell and Ellen S. Mandell, for relator.

Gerald R. Watson & Associates and Gerald R. Watson, for respondent.